UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER NICHOLS<br>    Plaintiff<br><br>v.<br><br>REVEREND ARTHUR D. JOHNSON<br>AND DEFENDANT TWO<br>    Defendants | CIVIL ACTION NO. 05-CV-11422-RCL |

### OPPOSITION OF PROPOSED ADDITIONAL DEFENDANT, REV. ARTHUR F. SMITH, O.S.A., TO PLAINTIFF'S MOTION TO AMEND[1]

**I.     Summary of Argument**

Plaintiff has filed a motion to amend his complaint to add Rev. Arthur F. Smith, O.S.A. as a defendant. The motion is presented eight months after this action was removed from state court and almost 15 months after the matter was first filed. The motion implies but never states that Father Smith is being made a party based on recently discovered evidence. In fact, no evidence learned after this action was commenced is offered to support the timing of the motion. Neither does plaintiff present evidence of substance to warrant adding Fr. Smith as a party defendant. Further, plaintiff seeks to add Fr. Smith in his individual capacity, but alleges only neglect of supervisory duties owed as an employee of Austin Preparatory School ("Austin Prep") or as the local Prior of his religious community; consequently, Fr. Smith is not individually subject to the personal jurisdiction of courts in Massachusetts. Finally, requiring Fr. Smith, a citizen of Pennsylvania who is an infirm Alzheimer's patient, to defend himself in Massachusetts

---

[1]  Defendant Reverend Arthur D. Johnson has filed a separate opposition to the motion. Fr. Smith hereby restates and incorporates herein the arguments contained in Fr. Johnson's opposition.

would not be consistent with constitutional due process. For all these reasons, the motion to amend should be denied.

## II.     Factual Background

Plaintiff has identified his abuser as Rev. Robert A. Turnbull, a former member of the faculty at Austin Prep. Fr. Turnbull is deceased. The abuse is alleged to have occurred in 1977 when plaintiff was a high school freshman. At the time, Turnbull was a teacher and assistant football coach at the school.

Father Smith has been a citizen of Pennsylvania for the past 19 years and presently lives at the Augustinian Monastery in Villanova, Pennsylvania. He is eighty years old. He is confined to the Monastery where he receives around-the-clock care for mental and physical ailments. Among other things, he suffers from senile dementia with agitation and psychosis. He has other chronic and debilitating medical problems which impair the function of his heart and lungs. *See* Physician Affidavits attached hereto as Exhibits A and B.

Based on publicly available national directories available from, *inter alia,* the Boston Public Library and dated no later than 1982, plaintiff identifies Father Smith as Dean of Studies at Austin Prep from 1964 to 1968. Plaintiff does not offer any evidence that Father Smith was an officer or administrator at the school when the abuse by Fr. Turnbull took place. *See* Plaintiff Peter Nichols' Motion to Amend Complaint ("Nichols Br."), Exhibit 4.

Plaintiff refers to the same directories as his source for identifying Father Smith as Prior of the Augustinian community associated with Austin Prep during the years from 1970 to 1979. *Id.* Plaintiff has offered nothing, and can offer nothing, to connect the Augustinian Order with ownership, control or administration of Austin Prep at the time of the alleged abuse. In fact, the defendant, Reverend Arthur D. Johnson, in his Initial Disclosures previously served on plaintiff

pursuant to Rule 26(a)(1), proffered a document that memorializes the transfer of the school by the Augustinian Order to a lay board in 1973, four years prior to the alleged events upon which plaintiff bases his complaint. See Initial Disclosures of the Defendant Reverend Arthur D. Johnson and the Memorandum of Understanding between Augustinian High School of Reading, Massachusetts and the Province of St. Thomas of Villanova, dated June 11, 1973, attached hereto as Exhibit C.

      One of the principal exhibits offered in support of the motion is plaintiff's Exhibit (5), a May 6, 1981 memorandum which recites that Fr. Smith was made aware by an unnamed doctor at some indefinite time that Father Turnbull had been accused of inappropriately touching another student. From this plaintiff infers: that the incident occurred; that it occurred at least four years prior to 1981; that it gave notice of a recurring pattern of behavior by Fr. Turnbull prior to 1977; that Fr. Smith was made aware of the report at least four years prior to 1981; and that Fr. Smith had the responsibility and ability in his role as Prior to prevent future abusive behavior by Fr. Turnbull. The cascade of inferences depends upon unsupported factual assumptions of rhetorical value to the plaintiff, but lacking even nominal corroboration in the motion. None of the temporal propositions advanced in plaintiff's brief can be inferred from the 1981 memorandum, which itself gives no time frame either for the conversation with the unnamed doctor or the incident which was the subject of conversation. Each of those time links is needed, as plaintiff's own impulse to supply them attests. Accepting the inferences as reasonable from the party having the burden of proof would embrace the fallacy of assuming that a proposition is true simply because it hasn't been proven false.

      The same defective reasoning is found in plaintiff's treatment of Exhibits (6) (the Assault Report), (7) (Mulkerrin Memo) and (8) (Doyle complaint). None of these documents logically

supports the inference that Fr. Smith knew about claims of sexual abuse by Fr. Turnbull before Mr. Nichols was abused in 1977.

**III.    Argument**

    **A.    Plaintiff's motion is not based on recently discovered evidence**

Plaintiff has not offered any explanation for the timing of his application. None of the exhibits attached in support of the motion can credibly be said to have been acquired by counsel after this suit was filed. Neither have they been described to this court as "new" information.[2]

Exhibit (2) (Mr. Nichols' high school transcript) must have been in counsel's possession before suit was filed.  Exhibit (4) (a collection of directories) has been publicly available since 1982.  Exhibits (3) (Fr. Turnbull's biographical data), (5), (6) and (7) were apparently obtained by Mr. Nichols' lawyers in connection with prior litigation. Exhibit (8) is a copy of a civil complaint filed by plaintiff's counsel for another client more than three years ago. It is thus clear from plaintiff's application that the request for leave to amend is not timely.  See LR. 15.1(A) (amendments to add a party "*shall* be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party." (Emphasis added.))  *See also Data General Corp. v. Grumman Systems Support Corp.*, 825 F.Supp. 340, 345 (D.Mass. 1993). A motion to amend may be denied where a party does not take action until long after it first becomes aware of the facts which form the basis for the motion.  *See Steir v. Girl Scouts of the USA*, 383 F.3d 7, 14 (1st Cir. 2004).  *See also Montgomery v. First Family Financial Services*, 239 F.Supp. 2d 600, 606 (S.D. Miss. 2002)(motion for leave to add a defendant ten months into litigation denied); *Datascope v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed.Cir. 1991) (motion

---

[2] It is noteworthy that at several places in the motion plaintiff recites that the complaint as initially filed stated claims against an unidentified "Defendant Two" "the identity of whom [was] then unknown to Plaintiff Peter Nichols".  *See, e.g.* Plaintiff's memo pp. 2, 7.

denied where plaintiff was or should have been aware of the relevant facts long before it sought to add additional defendant).

Even if the motion were to be granted, the amendment should not be deemed to relate back to the original filing of plaintiff's complaint. The requirements of Fed. R. Civ. P. Rule 15(c)(3) have not been met. The plaintiff puts forth no argument that Fr. Smith had previously "received notice of the institution of the action…." Rule 15(c)(3)(A); nor is there any evidence that Fr. Smith "knew or should have known that, but for a mistake concerning identity of the proper party" the action would have been brought against him. Rule 15(c)(3)(B). Where the plaintiff knew the identity of the party sought to be added, but failed to include him in the original filing, the element of "mistake" cannot be met. *In Re XChange, Inc. Securities Litigation*, 2002 WL 1969661, at *3 (D. Mass. 2002). Even where a plaintiff does not know the identity of the party at the time the complaint is filed, he cannot avail himself of the relation-back doctrine because there is no "mistake" within the meaning of Rule 15(c). *Wilson v. United States*, 23 F.3d 553, 563 (1st Cir. 1994); *See also Malesko v. Correctional Services Corp.*, 229 F.3d 374, 383-384 (2nd Cir. 2000) (same result where motion is to substitute a named individual for a "John Doe" defendant), *rev'd on other grounds*, 534 U.S. 61 (2001).

**B.     Plaintiff's amendment would be futile for substantive reasons**

Plaintiff's legal theory against Fr. Smith is that he was independently and personally "negligent in at least the retention, direction, and supervision of Father Turnbull." (Nichols Br. at 10). The proposed amended complaint alleges that Fr. Smith was "Prior of Austin Preparatory School…and at times material hereto, had a duty to hire, supervise, direct and retain the late Father Turnbull." (proposed Second Amended Complaint, para. 3). In support of that theory plaintiff cites cases exploring common law remedies against employers for the misconduct of

5

employees or hired independent contractors. (Nichols Br. at 3-5). However, plaintiff has not proffered a factual predicate for a master/servant, employer/employee, principal/agent, or employer/independent contractor relationship between Fr. Smith and Fr. Turnbull. Austin Prep is the only employer of Fr. Turnbull identified in the Motion to Amend or in the proposed Second Amended Complaint.

As for the "special relationship" theory of liability, it exists only as an exception to the principle that there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another. (Nichols Br. at 6). That exception requires more than the unsupported speculation proffered by plaintiff's motion. Plaintiff offers nothing which reasonably implies that Fr. Smith was aware of any instance of sexual abuse by Fr. Turnbull prior to the abuse of plaintiff; much less a pattern of incidents creating notice to Fr. Smith that plaintiff could be the target of abuse. *See, Foley v. Boston Housing Authority*, 407 Mass. 640, 644-645, 555 N.E.2d 234 (1990); *Doe v. Braco*, 15 Mass.L.Rptr. 43, 46-47, 2002 WL 1923870, at *4-6 (Mass. Super. May 16, 2002).

      **C.**    **Personal jurisdiction over Fr. Smith does not exist**

It is also significant that the "special relationship" said to warrant Fr. Smith's joinder has nothing to do with any personal obligation but is found by plaintiff to be an attribute first of Father Smith's employment as Dean of Studies at Austin Prep and of his later post as local Prior of Augustinians employed by the school. That said, Fr. Smith's supposed non-feasance while acting in some official capacity for the school or the Order, both of which are incorporated entities,[3] will not support application of the Massachusetts Long-Arm statute. *See, LaValle v.*

---

[3] Austin Preparatory School is an active non-profit corporation organized under the laws of the Commonwealth of Massachusetts in 1961. Commonwealth of Massachusetts, Secretary of the Commonwealth, http://corp.sec.state.ma.us/corp/corpsearch (visited 3/12/06); The Brothers of the Order of Hermits of Saint

6

*Parrot-Ice Drinks Products*, 193 F.Supp.2d 296, 302 (D. Mass. 2002). *Cf., McCarthy v. Azure*, 22 F.3d 351, 360 (1st Cir. 1994) (acts performed by a defendant in a corporate capacity do not as a rule provide a basis for personal jurisdiction in the defendant's individual capacity);

Furthermore, the notion that an elderly, home-bound Alzheimer's sufferer domiciled in Pennsylvania can be forced to appear and defend himself in Massachusetts is fundamentally offensive to constitutional due process. *See*, *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210-211 (1st Cir. 1994) ("One reason that the factor of inconvenience to the defendant weighs heavily in the jurisdictional balance is that it provides a mechanism through which courts may guard against harassment.").

**IV.    Conclusion**

For the foregoing procedural, substantive and jurisdictional reason, plaintiff's motion for leave to add Fr. Smith as a defendant should be denied.

>
>
> DEFENDANT REVEREND ARTHUR F. SMITH
> By his Attorneys,
>
> */s/ Jean A. Musiker*
>
> _____
> Jean A. Musiker, BBO #365410
> Carol A. Roller, BBO # 665008
> Sugarman, Rogers, Barshak & Cohen, P.C.
> 101 Merrimac Street
> Boston, MA 02114-4737
> (617) 227-3030
> musiker@srbc.com
> roller@srbc.com

---

Augustine is an active non-profit corporation organized under the laws of the Commonwealth of Pennsylvania in 1804. http://www.corporations.state.pa.us/corp (visited 3/12/06).

Personal Counsel to Reverend Arthur Smith

Francis P. Burns, III
Lavin, O'Neil, Ricci, Cedrone & DiSipio
190 North Independence Mall West, Suite 500
6th & Race Streets
Philadelphia, PA 19106
(215) 627-0303

DATED:   March 20, 2006

## CERTIFICATE OF SERVICE

    I, Jean A. Musiker, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 20, 2006.

    Mitchell Garabedian, Esquire
William H. Gordon, Esquire
Law Offices of Mitchell Garabedian
100 State Street
Boston, MA 02109

    */s/ Jean A. Musiker*
_____
Jean A. Musiker
musiker@srbc.com

375017v2

EXHIBIT A

Case 1:05-cv-11422-RCL    Document 15-2    Filed 03/20/2006    Page 1 of 2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER NICHOLS,<br>      PLAINTIFF,<br>v.<br><br>REVEREND ARTHUR D. JOHNSON AND<br>DEFENDANT TWO,<br>      DEFENDANTS. | CIVIL ACTION No. 05-CV-11422-RCL |

### AFFIDAVIT OF JANET T. CONNELL, M.D.

Janet T. Connell, M.D., having been duly sworn according to law, deposes and says that:

1. I am a licensed physician in the Commonwealth of Pennsylvania, and specialize in the practice of psychiatry.

2. Rev. Arthur F. Smith, OSA has been my patient since August 9, 2005.

3. Father Smith's medical history is significant for Psychotic Disorder, Dementia, Depression and Anxiety Disorder.

4. In my professional opinion, due to his multiple psychiatric disorders, Father Smith is not able provide coherent, reliable testimony in a legal proceeding or understand the process.

5. Given his medical and mental condition, Father Smith resides at and is confined to the Augustinian Monastery in Villanova, Pennsylvania where he receives around the clock care and assistance in the activities of daily living.

6. I have been asked to provide this information by Father Smith's attorney-in-fact, Very Rev. Donald Reilly, OSA, Prior Provincial of the Brothers of the Order of the Hermits of Saint Augustine.

The foregoing statements are made subject to the penalties for unsworn falsification to authorities as set forth in 18 Pa.C.S.A. § 4904.

_____
Janet T. Connell, M.D.
Paoli, PA. 19301

Date: 03-16-2006

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER NICHOLS,<br>        PLAINTIFF,<br>v.<br><br>REVEREND ARTHUR D. JOHNSON AND<br>DEFENDANT TWO,<br>        DEFENDANTS. | CIVIL ACTION NO. 05-CV-11422-RCL |

### AFFIDAVIT OF JOSEPH C. GOLDSCHMIDT, JR., M.D., PH.D.

Joseph C. Goldschmidt, Jr., M.D., Ph.D., having been duly sworn according to law, deposes and says that:

1. I am a licensed physician in the Commonwealth of Pennsylvania, and specialize in the practice of internal and geriatric medicine.

2. Rev. Arthur F. Smith, OSA has been my patient for more than six years.

3. Father Smith's medical history is significant for aneurysm repair, coronary disease, gastroesophageal reflux disease, chronic obstructive pulmonary disease, and senile dementia with agitation and psychosis.

4. Father Smith's current medications include antipsychotics, Ativan, antidepressants and Aricept for his neuro-psych problems.

5. In my professional opinion, Father Smith is not able to understand the nature and significance of a legal proceeding, and is not competent to provide testimony in a legal proceeding because of his Alzheimer's disease and psychosis.

6. Given his medical and mental condition, Father Smith resides at and is confined to the Augustinian Monastery in Villanova, Pennsylvania where he receives around the clock care and assistance in the activities of daily living.

7. I have been asked to provide this information by Father Smith's attorney-in-fact, Very Rev. Donald Reilly, OSA, Prior Provincial of the Brothers of the Order of the Hermits of Saint Augustine.

The foregoing statements are made subject to the penalties for unsworn falsification to authorities as set forth in 18 Pa.C.S.A. § 4904.

Dated: 3/15/06

Joseph C. Goldschmidt, Jr., M.D., Ph.D
Drexel Hill, PA 19026

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-11422-RCL

PETER NICHOLS )
   Plaintiff )
)
v. )
)
REVEREND ARTHUR D. JOHNSON and )
DEFENDANT TWO, )
   Defendants )

### INITIAL DISCLOSURES OF THE DEFENDANT REVEREND ARTHUR D. JOHNSON

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and Local Rule 26.2(A), the Defendant Reverend Arthur D. Johnson (hereinafter "Defendant Reverend Johnson") hereby provides the following initial disclosures to the plaintiff.

Fed.R.Civ.P. 26(A)(1)(A):

Defendant Reverend Johnson has identified the following individuals who are likely to have discoverable information that may be used to support his claims and defenses. The individuals listed below can contacted through their counsel, Jean A. Musiker and Matthew J. Fogelman.

   1. Defendant Reverend Johnson has knowledge regarding the duties and responsibilities of a sub-prior of the St. Augustine Friary, the relationship between the St. Augustine Friary and Austin Preparatory School of Reading, Massachusetts, and the relationship between the St. Augustine Friary and faculty at the Austin Preparatory School. He also has knowledge concerning any allegations that relate to him directly.

2. Reverend Francis J. Horn, O.S.A., J.C.D., has knowledge regarding the duties and responsibilities of a sub-prior of the St. Augustine Friary. Reverend Horn also has knowledge regarding the organization, government, and structure of the Order, including the duties and responsibilities of the Order's officers, as well as the relationship between the Order and its members. Father Horn has knowledge of the canon law to which the Order and its members are subject.

Fed.R.Civ.P. 26(A)(1)(B):

Defendant Reverend Johnson has in his possession, custody, or control the following documents or categories of documents that may be used to support his claims or defenses.

1. Rule and Constitutions of the Order of Saint Augustine.

2. Letter to Charles H. McLaughlin, Board of Trustees, Austin Preparatory School, dated June 12, 1973.

3. Memorandum of Understanding and Addendum between Augustinian High School of Reading, Massachusetts and The Province of St. Thomas of Villanova, dated June 11, 1973.

Fed.R.Civ.P. 26(A)(1)(C):

Not applicable.

Fed.R.Civ.P. 26(A)(1)(D):

The defendant agrees to produce a copy of the declaration page from the applicable insurance agreement, Comprehensive General Liability Insurance Policy No. CBP 68721, issued by Firemen's Insurance Co.

Respectfully submitted,
DEFENDANT REVEREND ARTHUR D. JOHNSON
By his Attorneys,

*/s/ Matthew J. Fogelman*

Jean A. Musiker, BBO #365410
Matthew J. Fogelman, BBO #653916
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA 02114-4737
(617) 227-3030

Dated: November 29, 2005

CERTIFICATE OF SERVICE

I, Matthew J. Fogelman, hereby certify that on the above date I served the within document by mailing a copy thereof, postage prepaid, to the following counsel of record:

William H. Gordon, Esquire
Law Offices of Mitchell Garabedian
100 State Street
Boston, MA 02109

*/s/ Matthew J. Fogelman*

Matthew J. Fogelman

370483

- 3 -

MEMORANDUM OF UNDERSTANDING

AUGUSTINIAN HIGH SCHOOL OF READING, MASSACHUSETTS

AND

THE PROVINCE OF ST. THOMAS OF VILLANOVA

WHEREAS, by resolution unanimously passed by the Provincial Council on the 20th day of February, 1973, it was, "Moved that a 'Memorandum of Understanding' be drawn up between the Province of St. Thomas of Villanova and the Board of Trustees of Augustinian High School of Reading, Massachusetts, to ensure that the Province is relieved of all legal and fiscal responsibility for the institution, and that the past, present, and future investment of the Province in contributed services and the past and present cash loans be protected"; and

WHEREAS, it has been voted by the Executive Board of Augustinian High School of Reading, Massachusetts, to reform the Board of Trustees with a view to continue the operation of the school.

NOW, THEREFORE, in consequence of the foregoing, the Province of St. Thomas of Villanova, hereinafter called the "Province", and Augustinian High School of Reading, Massachusetts, hereinafter called the "School", agree as follows:

1. Upon finalizing this agreement, the Province of St. Thomas of Villanova will pay to the School the sum of $350,000.00, as previously agreed, less whatever sum or sums have been paid to Internal Revenue Service ($42,700.00) in behalf of the School for withholding and other federal taxes, the sum or sums paid to the New England Merchants National Bank of Boston, Massachusetts ($64,811.25), as Trustee, for the Trust Indenture of the First Mortgage Bond of Augustinian High School of Reading, Massachusetts, as hereinafter further set forth.

2. The School will retire the financial obligations due to the Province, including both cash loans and contributed services accumulated prior hereto or in consequence hereof, as follows:

   (a) The parties hereto recognize the obligation of the School to the Province in the amount of $471,000.00 representing monies advanced in the amount of $228,511.25, and the sum of $242,488.75 to be advanced upon execution of this memorandum. For additional consideration in the execution of this agreement, the School agrees to liquidate the debt to the following banks, which have demand loans with the School.

       1. Arlington Trust Co. - $60,000.00, plus accrued interest.
       2. Burlington Bank and Trust Co. - $40,000.00, plus accrued interest.
       3. Middlesex County National Bank - $50,000.00, plus accrued interest.

(b) The entire amount due shall be payable in or within fifteen (15) years from the date hereof, without prepayment penalty, with interest on the unpaid balance at the rate of six (6%) per centum per annum computed and paid quarterly, but not compounded. The principal shall be paid in forty (40) equal quarterly installments beginning five (5) years from the date of these presents.

The interest for the first two years shall not be paid, as above set forth, but shall be added to the principal sum of the obligation under paragraph 2(a) above.

(c) After the obligation for monies advanced has been satisfied in full, the sum of money represented by "Contributed Services" shall be paid by the School to the Province. The total sum due shall be determined on the basis of $1,000.00 per year for each of the faculty or administrative officials, and the rate of repayment shall be twenty thousand ($20,000.00) dollars per year.

(d) Augustinian High School of Reading, Massachusetts, will recognize the financial obligations due to the Archdiocese of Boston, as hereinafter set forth.

3. It is further agreed that in the event it becomes necessary to sell the School, the proceeds thereof shall be distributed in the following order of priority:

(a) It is legally required that the bond obligation be first paid in full;

(b) The Province shall next be repaid, including the original investment, monies advanced since opening of the School, and the obligation designated as "contributed services";

(c) The Archdiocese shall be repaid for funds advanced originally upon founding of the School.

(d) Any excess of funds, after all debts and obligations have been satisfied in full, shall be paid to the Province of St. Thomas of Villanova for its good works.

4. The Province will supply to the School a minimum of five (5) of its members as faculty and/or administrative officials for the next school year and, thereafter, the number shall be as the requirements of the Province will permit.

5. Through the Prior, the School will compensate the members of the Province who may serve as faculty or administrative officials of the School on the same basis as comparable lay members of the staff, both as to salaries and fringe benefits.

6. The School will provide housing accommodations and living facilities in the Monastery in accordance with past standards and, in payment therefor, the Prior of the Monastery shall pay to the School from the salary fund the sum of eighteen hundred ($1,800.00) dollars monthly, based on the five member minimum.

7. In the event that the Headmaster of the School is to be an Augustinian, he shall be nominated by the Provincial of the Province of St. Thomas of Villanova, and his appointment approved and confirmed by the Board of Trustees of the School.

8. The Trustees of the School will take the necessary action to effect certain changes, as follows:

   (a) The legal title of the corporation shall be amended from "Augustinian High School of Reading, Massachusetts" to "Austin Preparatory School", and Article I, Section 1 of the By-Laws shall be amended to conform thereto.

   (b) The Trustees shall amend the Articles of Organization so as to delete from the purposes the phrase "administered by the Augustinian Fathers".

   (c) The Trustees will amend or cause to be amended Article V, Section 3a and 3c of the By-Laws so as to delete therefrom the term "Rector" and substitute therefor the title "Headmaster".

9. The matters contained in Paragraphs 4, 5, and 6, as heretofore set forth, shall be subject to renegotiation annually at the request of either party hereto.

10. It is understood by the Province and the School that although the Province is unable to provide any further financial or fiscal support to the School, that whatever and whenever possible the Province will supply all moral and advisory assistance consistent with the aims and purposes of both organizations.

This Memorandum of Understanding executed this 11th day of June, 1973.

| THE PROVINCE OF ST. THOMAS OF VILLANOVA | AUGUSTINIAN HIGH SCHOOL OF READING, MASSACHUSETTS |
|---|---|
| By: _____ *[signature]*, osa<br>Duly Authorized | By: _____ *[signature]*<br>Duly Authorized |